UNITED STATES of America

v.

DEERFIELD SPECIALTY PAPERS, INC., et al.

Crim. No. 80–094.

United States District Court, E. D. Pennsylvania.

Oct. 9, 1980.

Arthur H. Kahn, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Philip G. Koenig, Dennis Kelly, Herrick & Smith, Boston, Mass., for Deerfield Specialty Papers, Inc.

John G. Harkins, Jr., Laurence Z. Shiekman, Deborah F. Cohen, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Paul Noelke, W. Stuart Parsons, Michael H. Schaalman, Gerald G. Miller, Quarles & Brady, Milwaukee, Wis., for Philip Morris Industrial Inc. (Nicolet).

Oliver C. Biddle, Helen P. Pudlin, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., R. Gordon Smith, R. Brian Ball, McGuire, Woods & Battle, Richmond, Va., for Riegel Products Corp.

Ralph W. Brenner, Steven R. Fischer, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., H. Richard Wachtel, Grant S. Lewis, Howard S. Ockman, LeBoeuf, Lamb, Leiby & MacRae, New York City, for St. Regis Paper Co. (Rhinelander).

Samuel E. Dennis, Aaron Beyer, Meltzer & Schiffrin, Philadelphia, Pa., for Westfield River Paper Co., Inc.

David L. Pennington, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., John R. Hally, Mary R. Long, Nutter, McClennen & Fish, Boston, Mass., for Richard C. Emery.

Carmen C. Nasuti, Nasuti, Miller & Fioravanti, Philadelphia, Pa., Thomas E. Brown, James M. Fergal, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for Robert G. Etter.

Richard C. Rizzo, Barbara P. Ianacone, Dechert, Price & Rhoads, Philadelphia, Pa., for John E. Griffith.

Robert W. Sayre, James G. Rosenberg, David S. Antzis, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for Orrin B. Clifford.

Seymour I. Toll, Diana Hare, Toll, Ebby & Gough, Philadelphia, Pa., for John R. Babeuf.

A. Grant Sprecher, Joseph R. Davison, Obermayer, Rebmann, Maxwell & Hippell, Philadelphia, Pa., Richard L. Manning, Timothy J. Kerr, Crowley, Fuller & Manning, Chicago, Ill., for Edward J. Bogest.

Howard Gittis, Gregory T. Magarity, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for Hollis P. Fowler.

Walter L. Devany, Norman B. Carter, Eduardo C. Robreno, Middle Atlantic Office, Antitrust Division, U. S. Dept. of Justice, Philadelphia, Pa., for the Government.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

On February 28, 1980, the Grand Jury handed down an indictment charging five (5) corporations and eight (8) individuals [1] with a combination and conspiracy to raise, fix, maintain and stabilize the prices and terms and conditions of sale of glassine and greaseproof paper. The indictment charges that the conspiracy and combination began at least as early as January, 1973 and continued until at least August, 1976. In the prosecution of this case, numerous pre–trial motions have been filed both by the Government and the defendants, jointly and individually. The following discussion and resolution will pertain to these aforementioned motions.

I. *Motion To Dismiss Indictment.*

The defendant Hollis P. Fowler, past president and chief executive officer of the defendant Westfield River Paper Company, filed a Motion To Dismiss Indictment alleging two (2) foundations in support. In the first instance, the defendant contends that he received oral and written promises from the government concerning a grant of informal immunity and that he provided pertinent information to the government while under the impression that he was under

---

1. On March 7, 1980, the defendant Robert R. Ackley entered a plea of *nolo contendere.* Sentencing proceedings were deferred by the Court pending the resolution of the entire case.

immunity which was subsequently used against him before the Grand Jury. The defendant also asserts that the government allegedly failed to present evidence to the Grand Jury which it knew to be exculpatory. On May 8, 1980 and August 27, 1980, respectively, the defendant Westfield River Paper Company and the remaining corporate and individual defendants joined in and adopted the defendant Hollis P. Fowler's motion as regards the allegation concerning the government's failure to present exculpatory material to the Grand Jury.

■ A. *Immunity.* The defendant Hollis P. Fowler contends that he is entitled to a dismissal of the indictment because it was obtained directly or derivatively from information he provided to the government while he was under an informal grant of immunity.[2] The defendant asserts that an indictment presented on the basis of evidence obtained through a grant of immunity is tainted and must be dismissed. Of course, if the defendant can establish the validity of his allegations, he will be entitled to the relief requested. *See, e. g., United States v. Paiva,* 294 F.Supp. 742 (D.D.C.1969).

The Court's initial inquiry necessarily undertaken to arrive at a resolution of the defendant's motion concerns whether a grant of immunity was effected or an agreement not to prosecute created. Although a distinction between the two (2) concepts exists,[3] the Court will not endeav-

2. The defendant has also contended that the sanction of dismissal of the indictment is required because the government has inadvertently destroyed its notes of a February 28, 1979 interview with the defendant. Reliance is placed on *United States v. Vella,* 562 F.2d 275 (3d Cir. 1977), in support of this proposition. The Court acknowledges that these notes may have shed some light on the substance of the defendant Fowler's statements made during that interview but it will not dismiss the indictment on this basis. It is recognized that a memorialization of this interview occurred approximately one (1) month after the interview, the notations recorded by the defendant's wife are available and the lists of questions used by government counsel have been disclosed. The fact of the existence of this co–extensive information and the apparent lack of bad faith by the government warrants a conclusion that the government's act of destroying its notes, though error, is but a harmless one. *See, e. g., United States v. Lieberman,* 608 F.2d 889, 895–96 (1st Cir. 1979); *United States v. Heard,* 439 F.Supp. 172, 194 (E.D.Pa.1977) and *United States v. Vella, supra* at 276; *United States v. Walden,* 465 F.Supp. 255 (E.D.Pa.1978).

3. Although the difference between a grant of immunity and an agreement not to prosecute may appear to be purely a matter of semantics, it is far more in reality. *See generally United States v. Pellon,* 475 F.Supp. 467 (S.D.N.Y. 1979). *See also United States v. Quatermain,* 613 F.2d 38 (3d Cir. 1980).

Judicial treatment differs when a particular defendant who is benefitting from a grant of immunity fails to provide the consideration proffered as a *quid* for *quo* as opposed to when another defendant who is benefitting from an agreement not to prosecute fails in the same regard. *See In Re Kelly,* 350 F.Supp. 1198 (E.D.Ark.1972). Since the decision rendered in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) and its progeny, disputes concerning grants of immunity have been resolved after the completion of evidentiary hearings wherein the government must provide evidence supportive of the indictment which was derived from sources independent of the information provided by the defendant. *See, e. g., United States v. Kurzer,* 534 F.2d 511 (2d Cir. 1976); *United States v. Quatermain,* 467 F.Supp. 782 (E.D.Pa.1979). In pre–*Kastigar* cases, courts that have labeled pacts entered into by government prosecutors and individual defendants as agreements not to prosecute have emphasized an inquiry concerning whether the particular defendant has breached his portion of the bargain. *See, e. g., United States v. Ciotti,* 469 F.2d 1204 (3d Cir. 1972); *United States v. Paiva,* 294 F.Supp. 742 (D.D.C.1969). This distinction has apparently continued on a post–*Kastigar* basis as evidenced by a comparison of the majority opinion and dissent in *United States v. Quatermain, supra.*

The characterization of the instant pact as either a grant of immunity or an agreement not to prosecute will determine the Court's focus when confronting the allegation that a promise has been reneged upon. If it is determined to be a grant of immunity, a *Kastigar* hearing will be required. (At least one court has held that a defendant's failure to abide by his promise of cooperation in exchange for immunity gives rise to only the potential penalties of contempt or perjury. *United States v. Kurzer, supra* at 518. *Contra United States v. Henderson,* 406 F.Supp. 417 (D.Del.1975)). On the other hand, if it is determined to be an agreement not to prosecute, the inquiry turns on whether the agreement was breached. A conclusion that the agreement was breached would not preclude prosecution while the contrary would

or to discern the nature of the apparent bargain struck but rather whether a bargain was indeed struck at all. The issue concerning the characterization of the agreement will be resolved subsequent to the submission of additional memoranda and at a more appropriate time.[4]

In support of his contention that an agreement had been reached, the defendant has proffered a letter written on February 22, 1979, by Norma B. Carter, Esquire, an Assistant United States Attorney associated with the Department of Justice, Antitrust Division, Middle Atlantic Office, and which was addressed to the defendant. The letter apparently was a memorialization of a previous phone call and reads as follows:

February 22, 1979

Dear Mr. Fowler:

This is to confirm our appointment for February 28 at 12 o'clock. As we discussed, based upon your representation of your medical history and *your offer of cooperation with the Government, the Antitrust Division does not intend to prosecute you for any violation of the antitrust laws based on information or testimony you may give in connection with this matter.*

If you have any questions, please call me collect at (215) 597–7413.

Sincerely yours,
NORMA B. CARTER
Attorney
Middle Atlantic Office
Antitrust Division

(Emphasis added). The government contends that this letter in no way constituted an informal grant of immunity (or an agreement not to prosecute) but rather was merely an invitation for a proffer. According to the government, "Fowler was never told, either on the telephone, by letter, or during the interview, that he would never be subject to prosecution." Government's Memorandum In Opposition To Motion Of Hollis P. Fowler To Dismiss The Indictment, Docket Entry No. 6 at p. 7. For the reasons that follow, the Court finds the government's position unpersuasive and concludes that some type of bargain had been struck.

■ A review of the language contained in the letter reveals that some type of bargain had been reached by the government and the defendant. In essence, the government promised that it would not prosecute the defendant for violations of the antitrust laws so long as the defendant fulfilled its promise of cooperation. Preliminarily, however, the Court does note that the language of the letter suggests an agreement not to prosecute rather than a blind grant of informal immunity.

The language contained in the letter existing in the present case bears a marked similarity to the letter subject to controversy in the case of *United States v. Quatermain*, 467 F.Supp. 782 (E.D.Pa.1979), *rev'd on other grounds*, 613 F.2d 38 (3d Cir. 1980). The letter in *Quatermain* was set forth as follows:

This letter *is to confirm our understanding with respect to your cooperation with the Drug Enforcement Administration and the United States Attorney's Office* in its investigation of Zelman A. Fairorth and others who are allegedly involved in the manufacture of methamphetamine. *It has been agreed that in return for your cooperation and truthful testimony in any court proceeding related to these matters that the Government will provide you with immunity from prosecution for your participation and involvement with Zelman A. Fairorth and*

---

mandate its foreclosure. *Cf. Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1970) (plea bargain). The difference is obvious; in the former, the government must establish evidence derived from sources independent of the defendant and supportive of the indictment while, in the latter, the government bears the burden of presenting evidence that the defendant failed to fulfill his part of the bargain.

At present, the Court is not obligated to determine which label to attach to the pact and, concomitantly, which procedure to adopt. It is noteworthy, however, that at least in the present case the evidence required to be submitted for either procedure would appear to be substantially similar.

4. *See* note 7 and accompanying text *infra.*

others relating to the manufacture of methamphetamine. It is further agreed that at the completion of our investigation the Government will provide you with a letter setting forth the extent of your cooperation and the results of that cooperation in terms of seizure of contraband and prosecution of suspected violators. Finally, it is understood that application has been made on your behalf to include you and your family under the Department of Justice witness protection plan. In the event that you are not accepted into the witness protection plan the Drug Enforcement Administration has agreed to provide you with the same services and protections afforded by the Department of Justice witness plan.

The Government represents that it has contacted the appropriate officials of the Pennsylvania Department of Parole and has received approval for your assistance in this investigation.

*United States v. Quatermain, supra* at 38. (Emphasis added). Although the district court concluded that an informal grant of immunity was provided, without considering the possibility of it being merely an agreement not to prosecute,[5] opinions differed in the United States Court of Appeals for the Third Circuit as evidenced, primarily, by Judge Aldisert's dissent. Regardless, for purposes of deciding what is immediately before the Court, *Quatermain* lends support in a near conclusory fashion that a bargain indeed had been struck. *See also United States v. Pellon,* 475 F.Supp. 467 (S.D.N.Y.1979).

Whether the pertinent letter memorialized an informal grant of immunity or an agreement not to prosecute, it is axiomatic that either are enforceable. *See, e. g.,*

*United States v. DeSena,* 490 F.2d 692, 694 (2d Cir. 1973); *United States v. Levy,* 153 F.2d 995, 997 (3d Cir. 1946); *United States v. Paiva, supra.* "[O]rdinarily immunity in the federal system may be granted only with the approval of the court pursuant to express statutory authorization." *United States v. Carter,* 454 F.2d 426, 427 (4th Cir. 1972). Falling short of such formal grants, however, grants or agreements not authorized by statute have been upheld and enforced. *See generally Working Papers of the National Commission on Reform of Federal Criminal Laws,* Vol. II, 1419–20 (1970).[6]

In light of the Court's decision that indeed a bargain had been struck between the government and the defendant Hollis P. Fowler, the inquiry turns to the manner and method of considering the defendant's allegations and, if proven, their effects. As earlier noted, a characterization whether the bargain constitutes a grant of immunity or an agreement not to prosecute dictates the nature of the procedure eventually utilized. If the bargain is determined to constitute a grant of immunity, the procedure adopted to test the defendant's allegations will be of a nature prescribed in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) wherein the government bears the burden of establishing that information supportive of the indictment was derived from a source or sources independent of the defendant. If the bargain is determined to constitute merely an agreement not to prosecute, a procedural device similar to a *Kastigar* hearing may be utilized wherein the government bears the burden of establishing that the defendant

---

**5.** The district court acknowledged that it was "agreed that there was an immunity agreement." *United States v. Quatermain, supra* at 787.

**6.** For purposes of the Court's ultimate decision concerning the characterization of the pact, it is noteworthy that some courts require utilization of statutory authorization before immunity may be considered granted. *United States v. Kurzer, supra; United States v. Carter,* 454 F.2d 426 (4th Cir. 1972); *United States v. Qua-*

*termain, supra* (dissent). Additionally, the procedure suggested for offering and finalizing a grant of immunity is well–documented. *See United States v. Quatermain, supra* (dissent); *United States v. Kurzer, supra. See also,* Guidelines Relating to Use of Statutory Provisions to Compel Testimony or Production of Information attached as Exhibit 1 to Hollis P. Fowler's Supplemental Memorandum In Support Of His Motion To Dismiss The Indictment, Docket Entry No. 8.

has breached the agreement.[7] Notwithstanding this cursory dissertation, the Court deems it desirable and, in fact, necessary to defer characterization of the pact, and the conduct of a hearing concomittantly required, until a time post trial.

■ In short, the Court is of the opinion, and so rules, that the conduct of a *Kastigar* or other type hearing going to the matters described above should be deferred until the completion of trial. This ruling is made notwithstanding the suggestion made in *Kastigar* that such matters should be considered on a pretrial basis.

A person accorded this immunity under 18 U.S.C. § 6002, and subsequently prosecuted, is not dependent for the preservation of his rights upon the integrity and good faith in the prosecuting authorities. As stated in *Murphy*:

"Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." 378 U.S., at 79 n. 18, 84 S.Ct., at 1609. This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, *it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.* *Kastigar v. United States, supra* at 461, 92 S.Ct. at 1665. (Emphasis added). *See also United States v. McDaniel*, 482 F.2d 305, 311 (8th Cir. 1973). Since the advent of *Kastigar*, courts have considered it a matter of discretion whether to resolve issues as presented in the instant case at a pretrial hearing, during trial or at a post trial hearing. *See United States v. DeDiego*, 511 F.2d 818, 823–24 (D.C.Cir.1975). Elements

guiding the Court's discretionary determination at which stage the hearing should be held are whether the government will have to expose its entire case, whether a fragmentation of the trial will occur, whether a delay in trial will be required and whether and to what degree prejudice will accrue. *See, e. g., United States v. Jones*, 542 F.2d 186 (4th Cir. 1976); *United States v. First Western State Bank of Minot, North Dakota*, 491 F.2d 780 (8th Cir. 1974).

In the present case, the Court finds that the conduct of a *Kastigar* or other type hearing will cause virtually the complete exposure of the government's case. Moreover, and as a result, the trial process will become extremely fragmented. The Court is mindful of the considerable amount of time and money that the defendant will expend in his defense but views the government's prejudice resultant from exposure of its case and fragmentation of the process as at the minimum, countervailing. Accordingly, the hearing to determine the characterization of the agreement and the merits of the defendant's contentions will be delayed pending the completion of trial. The parties are cautioned that no other ruling is provided by the foregoing as respects this issue and that opportunities for additional memoranda and argument as well as a hearing will be provided at the appropriate time.

B. *Exculpatory Evidence.* The defendant Hollis P. Fowler has asserted that the government's failure to present evidence which it knew to be exculpatory also constitutes a ground for dismissal of the indictment. The evidence originally referred to would have been in the form of testimony provided by the defendant, himself, and a former employee of the defendant Westfield River Paper Company and associate of the defendant, Dudley Ross. The defendant Westfield River Paper Company joined in this motion on May 8, 1980. Essentially, the defendant Westfield River Paper Com-

---

**7.** *See* note 3 *infra*. The scrutiny of the agreement not to prosecute, if such it is deemed, will be conducted in accordance with standards governing "an odd mix of civil contract and estoppel law." *United States v. Quatermain,*

*supra* at 44. In addition, such scrutiny will involve the consideration of the fact that statements offered by the defendant were non–inculpatory.

pany contends that since the defendant Hollis P. Fowler was its past president and chief executive officer during the pertinent times and the only one through whom it allegedly engaged in the activities charged in the indictment, a dismissal of the defendant Hollis P. Fowler mandates its dismissal as well. On July 30, 1980, the Memorandum Of Defendant Westfield River Paper Company, Inc., In Reply To The Government's Memorandum In Opposition To Motion To Dismiss, Docket Entry No. 7, was filed and in which arose an additional issue concerning the government's alleged failure to present exculpatory evidence to the Grand Jury. This additional issue concerns the government's allegedly selective interrogation before the Grand Jury of the defendant Robert R. Ackley, who has since entered a plea of *nolo contendere*.[8] The remaining defendants joined in the defendant Hollis P. Fowler's motion on the limited basis of this issue on August 27, 1980. *See* Docket Entry No. 40.

The issue now before the Court is thus postured simply as whether and to what extent the government in its presentation to the Grand Jury was required to present exculpatory information, if such information existed. The inquiries pertaining to the particular testimony which is allegedly exculpatory and which the government failed to either present or elicit may be dealt with collectively and summarily.

As a general proposition by which the Court is guided, case law dictates that a prosecutor is not obligated to submit exculpatory evidence to a Grand Jury. *See, e. g., United States v. Y. Hata & Co., Ltd.,* 535 F.2d 508, 512 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976); *United States v. Ruyle,* 524 F.2d 1133, 1135–36 (6th Cir. 1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976).[9]

This rule reflects the philosophy that to convert a grand jury proceeding from an investigative one into a mini–trial of the merits would be unnecessarily burdensome and wasteful, since, even if an indictment should be filed, the defendant could be found guilty only after a guilty plea or criminal jury trial in which guilt was established beyond a reasonable doubt.

*United States v. Ciambrone,* 601 F.2d 616, 622 (2nd Cir. 1979). It is recognized, however,

> that where a prosecutor is aware of any substantial evidence negating guilt he should, in the interest of justice, make it known to the grand jury, at least where it might reasonably be expected to lead the jury not to indict.

*United States v. Ciambrone, supra* at 623. *See also ABA Project on Standards for Criminal Justice–The Prosecution Function,* § 3.6, pp. 90–91. For the reasons that follow, the Court will decline to adopt the

---

**8.** *See* note 1 *supra.*

The defendants contend that the defendant Robert R. Ackley, president of the defendant Deerfield Specialty Papers, Inc. during the time of the conspiracy alleged in the indictment, provided the government with "crucial information exculpatory to Westfield River Paper Company which was not presented to the Grand Jury." Memorandum Of Defendant Westfield River Paper Company, Inc. In Reply To The Government's Memorandum In Opposition To Motion To Dismiss, Docket Entry No. 7, p. 10. The "crucial information" referred to concerns his alleged statements that no agreements fixing prices were ever reached and that the defendant Westfield River Paper Company did not enjoy membership in the trade association which conducted the alleged conspiratorial meetings. *See* note 11 *infra.*

**9.** This proposition has also been implicitly recognized in this Circuit. *United States v. Addonizio,* 313 F.Supp. 486 (D.N.J.1970), *aff'd,* 451 F.2d 49 (3d Cir. 1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). The district court ruled:

Defendant H. Addonizio also seeks dismissal of the indictment on the ground that the United States Grand Jury may have failed to consider possible exculpatory evidence turned over to the United States by the Essex County Grand Jury. *Even assuming the existence of such exculpatory evidence, there is clearly no requirement that all of the evidence in a prosecutor's possession must be presented to a grand jury in order to sustain an indictment. United States v. Addonizio, supra* at 495. The United States Court of Appeals for the Third Circuit adopted this ruling when affirming the district court.

arguments of the defendants and will, accordingly, deny their motion.

Initially, the Court notes that the defendant Hollis P. Fowler's representations are essentially that none of his statements were inculpatory but merely provided the government with general information of the glassine paper industry. The defendant also apparently offered statements negating any participation on his part in the alleged conspiracy in restraint of trade. Moreover, it is noted that the defendants represent that had Dudley Ross and Robert R. Ackley been permitted to testify at all or in full, respectively, that exculpatory information would have forthcome for consideration by the Grand Jury. The defendants contend by reference to these witnesses that had their testimony been presented to the Grand Jury a version opposite to that presented by the government may have been considered and may have precluded a return of an indictment.

"An indictment is not defective because the defendant did not have an opportunity to present his version of the facts before the grand jury." *United States v. Ciambrone, supra* at 623. While the articulation of the general rule as set forth above has been more often presented in a context where a defendant has not been permitted to appear before a grand jury, *see e. g., United States v. Salsedo*, 607 F.2d 318 (9th Cir. 1979), the philosophy and intent of the rule itself is equally appropriate in cases such as exists here. *See generally United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977); *United States v. Y. Hata & Co., Ltd., supra; United States v. Addonizio*, 313 F.Supp. 486 (D.N.J.1970), *aff'd*, 451 F.2d 49 (3d Cir. 1971). Essentially, the grand jury tool is used to ascertain whether probable cause exists to believe that a crime has been committed and is not an adversary proceeding in which guilt or innocence is adjudged. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). There exists "no right of cross–examination or of introducing evidence to rebut a prosecutor's presentation." *United States v. Y. Hata & Co., Ltd., supra* at 512.

The nature of the proposed testimony viewed in accordance with the defendants' representations, if offered, would amount to a rebuttal of the government's case. This testimony, in most instances, would merely present issues of credibility which could not reasonably be expected to lead the Grand Jury to a conclusion not to indict. *United States v. Ciambrone, supra*. To require the submission of this testimony would amount to a preliminary or miniature trial before the Grand Jury. Moreover, acceptance of what the defendants propose would require the government to accomplish for the defendants indirectly what the defendants would have been specifically proscribed from doing directly. This would surely infringe upon the role of the prosecutor and the utility of the grand jury device as well as contravene the role provided the grand jury in our constitutional scheme.[10] *See generally Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–409, 100 L.Ed. 397 (1956).

While the government's argument that the law imposes no duty upon it to present evidence favorable to the accused to the Grand Jury is absolutely accurate, an indictment may nevertheless be dismissed "in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to a grand jury . . . ." *United States v. Lasky*, 600 F.2d 765, 768 (9th Cir. 1979), *citing Costello v. United States, supra*. *See also United States v. Thompson*, 576 F.2d 784 (9th Cir.

---

10. The Court's ruling is buttressed by the fact that the defendant Hollis P. Fowler was afforded two (2) opportunities to appear before the Grand Jury but failed to avail himself of them. *See* Government's Memorandum In Opposition To Motion Of Hollis P. Fowler To Dismiss The Indictment, Exhibits H and I. Additionally, in view of the fact that Dudley Ross was associated with the defendant Westfield River Paper Company as was the defendant Hollis P. Fowler, it may be presumed that the statements of

1978).[11] A determination of what may constitute a "flagrant case" in which a grand jury has been overreached or deceived in some particular way has been expanded by some courts to include indiscretions such as occurred in *United States v. Roberts*, 481 F.Supp. 1385, 1389 (C.D.Cal.1980):

> (1) the prosecutor's failure to abide by her promise to Judge Pregerson on September 27, 1979 that she would present to the Grand Jury all exculpatory evidence made available to her; (2) the failure to present to the Grand Jury the affidavit of Bert Cohen which tended to corroborate the version given by defendant Schneider in his testimony before both the Kadashaw and Churchwell Grand Juries; (3) the "gratuitous" irrelevant remarks of the prosecutor in attempting to discredit and slant the testimony of Schneider's exculpatory witness Roland Pagan; and (4) the failure to provide the polygraph evidence to the Grand Jury despite the prosecutor's guarantee to Judge Pregerson that all exculpatory evidence would be presented to the Grand Jury, and compounding this indiscretion by erroneously but unequivocally telling the Grand Jury that the polygraph evidence was inadmissible.[12]

In *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1979), an indictment was dismissed because the prosecutor labored under a conflict of interest, the prosecutor testified before the Grand Jury as the government's chief witness, adverse and incriminatory inferences were made by prosecutors in response to certain elicited testimony of various witnesses and, finally, the prosecutors selectively questioned witnesses in order to keep exculpatory information from the Grand Jury. Finally, for purposes of this case although the list is by no means exhausted, an indictment was dismissed in *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610 (N.D.Okl.1977) for reasons that there were unauthorized persons present during grand jury proceedings, questioning of a witness continued after the grand jury had recessed for the day, presentation of exculpatory testimony from the same witness improperly questioned was not accomplished and the prosecution failed to present other exculpatory information. The Court's inquiry now is to evaluate the substance of the alleged transgression(s) of the government prosecutors and ascertain whether they or it could constitute a "flagrant case" warranting a dismissal of the indictment.

In the first instance, the Court notes that the sole matter which could even conceivably be considered as a transgression or impropriety is the alleged selective interrogation of the defendant Robert R. Ackley.[13] As earlier noted, the defendants contend

---

the one would merely duplicate or serve to corroborate the statements of the other.

**11.** The defendants contend that the defendant Robert R. Ackley would have testified in accordance with the following had he not been selectively interrogated:

> For example, counsel for Westfield have reason to believe that in the course of the interview Mr. Ackley made it plain that Westfield was on the fringes of the industry, that during the indictment period it did not belong to the trade association, in conjunction with the meetings of which, alleged conspiratorial meetings were held. Further, that the president of Westfield, Mr. Fowler, was not liked or respected by the members of the industry.

> . . . . .

> Moreover, counsel for Westfield understand Mr. Ackley told the Government in response to their questions the crucial fact he believed that at meetings during the felony period,

upon which the Government relies, no agreements concerning pricing were reached.

Memorandum of defendant Westfield River Paper Company, Inc. In Reply To The Government's Memorandum In Opposition To Motion To Dismiss, Docket Entry No. 7, p. 10.

**12.** Reference in *Roberts* was made to the "cumulative effect" of the indiscretions of the prosecutor as justifying dismissal of the indictment. *United States v. Roberts*, 481 F.Supp. 1385, 1389 n. 7 (C.D.Cal.1980), *citing United States v. Samango*, 607 F.2d 877 (9th Cir. 1979). The Court considers the concept of "cumulative effect" to be inapplicable in the present case. If the action of the government may be permissibly characterized as improprietous, the Court views it to be a matter contained in one isolated incident, unmotivated by sinister ends. *See United States v. Birdman*, 602 F.2d 547 (3d Cir. 1979).

**13.** *See* note 12 *supra*.

that this grand jury witness would have presented evidence negating the existence of a conspiratorial agreement in restraint of trade and that, in any event, the defendant Westfield River Paper Company was not engaged in the conspiracy as it was not even a member of the trade association in which the conspiracy was allegedly formed. In primary support of this contention, the defendants cite *United States v. Gold, supra* and *United States v. Phillips Petroleum Co., supra.*

■ The Court finds that the defendants' contentions are unpersuasive. *United States v. Gold, supra* and *United States v. Phillips Petroleum Co., supra* involve a cumulation of established indiscretions attributable to the government prosecutors and thus these cases are distinguishable from the present case. Moreover, the effect of the indiscretions in the cited cases was of an established, substantial nature. The Court is unwilling to afford such stature to the allegedly selectively controlled and withheld testimony of the defendant Robert R. Ackley. In the absence of additional substantial transgressions, the Court rules that the alleged selective interrogation of the defendant Robert R. Ackley, even if proven or asserted as well–founded, does not arise to the proportions requiring dismissal of the indictment.[14] *Cf. United States v. Lasky, supra* (the dismissal of an administrative complaint by an administrative law judge, although constituting evidence negating guilt, need not be presented to a grand jury). In essence, selective interrogation of a grand jury witness, as it may have existed in the present case, may not warrant a "flagrant case" characterization requiring the dismissal of an indictment.[15]

## II. *Motions For Bills Of Particulars.*

The individual defendants have filed Motions For Bills of Particulars which have been adopted by and joined in by the corporate defendants. The motions have been asserted allegedly to avoid prejudicial surprise and delay at trial, to permit adequate

14. The defendants have requested a hearing of this matter and cite *United States v. Serubo*, 604 F.2d 807 (3d Cir. 1979) in support. The Court does not consider a hearing necessary to establish the verity of this allegation because even if assumed *arguendo* it may not be considered the "type of misconduct . . . [that] has become entrenched and flagrant in this circuit." *United States v. Serubo, supra* at 817, discussing *United States v. Birdman, supra.*

15. The defendants have additionally asserted that the government has committed prosecutorial misconduct by allegedly inhibiting access to the defendant Robert R. Ackley, an intended government witness who previously entered a plea of *nolo contendere.* Supplemental Memorandum Of Certain Defendants In Support Of Defendants' Joint Motion To Dismiss, Docket Entry No. 50, pp. 4–6. The government and Ackley had entered into a plea agreement pursuant to F.R.Crim.P. 11(e)(1)(C) whereby the government agreed to recommend that a period of probation of eighteen (18) months would be an appropriate sentence in exchange for the defendant's full cooperation. The defendants have alleged that the government has used its power to suggest a lack of cooperation of the defendant to the Court at the time of sentencing as leverage to inhibit Ackley from freely discussing the case with the defendants. The defendants contend that dismissal of the indictment is warranted under these circumstances.

*See United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976); *Gregory v. United States*, 369 F.2d 185 (D.C.Cir.1966).

In response, the government asserts that it in no way suggested a prohibition of access of Ackley to the defendants but rather merely sought to ensure that the substance of government interviews with Ackley weren't divulged to the defendants. Government's Memorandum In Opposition To Certain Defendants' Joint Motion To Dismiss, Docket Entry No. 52, pp. 5–7. A review of a October 1, 1980 letter from John J. Hughes, Esquire, Chief of the Middle Atlantic Office of the Antitrust Division, to Francis Dibble, Jr., Esquire, counsel to Ackley, indicates that the government's assertion is accurate and thus the defendants' case citations inapposite. There are no grounds here for dismissal of the indictment.

Although this aspect of the controversy is now resolved, the Court deems it advisable to comment on the propriety of Ackley's alleged conduct and the government's reciprocal request. Essentially, it would not appear appropriate for Ackley to act as a conduit of information to the defendants concerning the substance of his interviews with the government. It would also appear inappropriate to compel disclosure by the defendants of their notes from interviews with Ackley, a request presumably made on a "fair is fair" theory.

preparation of a defense and to gain an apprisal of the scope of the accusation to avoid any possible double jeopardy situation arising now or in the future. Collectively, the defendants request the following information:

(1) State the date, place and time of any gathering of two (2) or more persons at which there were any acts committed in the furtherance of the conspiracy which has been alleged in the Indictment. With respect to each such gathering, identify:

(a) All persons who were present;

(b) What was the nature of the alleged act;

(c) What was said or done and by whom;

(d) Were any decisions made, and if so, the nature of each decision.

(2) State the date and place of all telephone communications which the government alleges were conversations in furtherance of the conspiracy which has been alleged in the Indictment. For each such telephonic communication state:

(a) Who made the telephone call and to whom it was made.

(b) What was stated during the course of the telephone call by each party;

(c) What decisions were reached, if any.

(3) Identify all writings which the government contends were made in furtherance of the conspiracy which is alleged in the indictment. For each such writing, identify:

(a) The author of the writing;

(b) To whom the writing was sent or communicated;

(c) The date of the writing.

(4) Identify all persons who the government contends had any communication with any of the defendants in furtherance of the conspiracy which is alleged in the Indictment. For each person, state the following:

(a) The date and place of the communication;

(b) The subject matter of the communication;

(c) Who initiated the communication;

(d) The nature of any commitments or agreements the government contends were made by any of the defendants as a result of the communication.

(5) State any acts committed by any of the defendants which the government contends were in the furtherance of a commitment or agreement as alleged in the answer to No. 4 herein and identify any and all persons whom the government contends participated in said acts in the furtherance of the commitments and agreements stated in the answer to paragraph 4 herein.

(6) With respect to the allegations in paragraph 8 of the Indictment, state whether the alleged agreement, understanding, and concert of action among the defendants and co–conspirators included an agreement among competitors to charge the same or similar prices, included an agreement not to reduce prices without prior notification of competitors, included an agreement not to raise prices without prior notification of competitors, included an agreement to maintain specified price differentials among different types of glassine and greaseproof paper, included an agreement to charge prices on a geographical basis, included an agreement involving collusion in bidding, and included all types of glassine and greaseproof paper, or, if only some types, state which ones.

(7) Does the government contend that the defendants and co–conspirators acted with a conscious object of producing anti–competitive effects or does the government contend that the defendants and co–conspirators acted with knowledge of the likely occurrence of anti–competitive effects and that such anti–competitive effects actually occurred.

(8) When, where and with whom did any of the defendants agree to fix prices? What specific prices did he, it or they agree to fix and what specific prices were actually fixed? What acts did any of the defendants commit in furtherance of the alleged conspiracy after December 21, 1974 and on what dates?

(9) With respect to the allegations in paragraph 4 of the Indictment, list the names and addresses of all corporations and

individuals known to the government to have participated as co–conspirators with the defendants in the offense charged in the Indictment.[16]

(10) For each alleged agreement identified in answer to paragraph 6 state:

(a) When, how and by whom the agreement was reached;

(b) to whom it was communicated;

(c) when and how such communication was made.[17]

▌ Before discussing the merits of the defendants' requests, the Court notes that the decision whether to require a Bill of Particulars is a matter resting solely within its discretion. *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); *United States v. Armocida*, 515 F.2d 49 (3d Cir. 1975). When an indictment is vague–a vagueness not·dissipated by subsequent disclosures by the government which are intended to clarify the nature of the offense charged–a Bill of Particulars may be required to inform a defendant of the nature of the charges brought against him to permit adequate preparation of his defense, to avoid surprise during the trial and to protect him from a second prosecution for an inadequately described offense. *United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir. 1972), *quoting United States v. Tucker*, 262 F.Supp. 305, 308 (S.D.N.Y. 1966). In essence, the ruling upon such a motion involves a delicate

> balance between two competing concepts. On one hand, a defendant needs to know certain quasi–evidentiary facts in order to adequately prepare a defense. *United States v. Manetti, supra; United States v. Crisona, supra.* Yet the Government should not be forced into prematurely disclosing evidentiary matters to such an extent that they will be unduly confined in presenting their evidence at trial. *Id.*

These factors should be considered by a court when exercising its discretion in matters related to Bills of Particulars. *United States v. Greater Syracuse Board of Realtors*, 438 F.Supp. 376, 379–80 (N.D.N.Y. 1977).

▌ A review of the present record of this case reveals that the government has disclosed a considerable number of documents to the defendants which suggest to a sufficient degree the exact nature of the charges contained in the indictment. Thus, although the indictment alone may be somewhat "sketchy," *see, e. g., United States v. Tedesco*, 441 F.Supp. 1336, 1340 (M.D.Pa.1977), the provision of the following information to the defendants supplies a sufficient basis to apprise them of the general nature of the offense charged, the manner in which it will be attempted to be proved and the material facts necessarily relied upon:

(1) A copy of the grand jury transcript of each individual defendant and a copy of the grand jury transcript of each witness who could legally bind a corporate defendant, either by his testimony or conduct, in respect to conduct constituting the offense. In all, approximately 1,500 pages of testimony by nineteen witnesses were furnished;

(2) All documents in the possession of the Government, other than those generated by the Government, relevant to this indictment;

(3) The identity of all corporations and individuals who participated in the alleged conspiracy as co–conspirators during the period covered by the indictment;

(4) A further description of the scope of the interstate commerce restrained as a result of the conspiracy;

(5) A statement describing the nature of the conspiracy whether oral or written; and

---

**16.** Motion Of Defendant, Robert G. Etter, For Bill Of Particulars, Docket Entry No. 5. It may be noted for the record that all defendants have joined in the request for the information contained in paragraphs one (1) through seven (7), inclusive. All the defendants except the defendants John R. Babeuf, Hollis P. Fowler and Edward J. Bogest joined in the request for the information contained in paragraphs eight (8) and nine (9). Additionally, the defendant Orrin B. Clifford joined with respect to paragraph nine (9).

**17.** Motion Of Defendant Orrin B. Clifford, For Bill Of Particulars, Docket Entry No. 4, p. 4.

(6) The identity of the places and approximate dates of those conspiratorial meetings presently known to the Government.[18]

In light of the disclosures already made and the nature of the requests contained in the defendants' motion, it appears as though what is sought, in the majority,[19] is either or both a script of the government's case or matters usually pursued through civil–type discovery.

It is axiomatic that the government need not provide the defendants a detailed script of the format it intends to adopt at trial. *See, e. g., United States v. Addonizio, supra; United States v. Oxford Royal Mushroom Products*, 487 F.Supp. 852, 857 (E.D. Pa.1980). In essence, the Court believes that the defendants have a fairly complete understanding concerning what the government will present at trial. The revelation of a Bill of Particulars comprising a script as outlined by the majority of the defendants' requests will only serve to unnecessarily confine the government at trial.

 With respect to the nature of matters requested to be contained in the Bill, the Court acknowledges that a Bill is not "designed as a vehicle for discovery." *United States v. Oxford Royal Mushroom Products, supra* at 857. The defendants are not entitled in the present case to evidentiary matters, names of prospective witnesses or a list of overt acts which the government intends to prove at trial. *Wong Tai v. United States, supra; United States v. Murray*, 527 F.2d 401 (5th Cir. 1976); *United States v. Addonizio, supra*. In *United States v. Greater Syracuse Board of Realtors, supra* at 381, the Court was confronted with an indictment alleging violations similar to those alleged in the instant case and ruled as follows:

particularization is [not] required in respect of statements made, and acts performed, by the various defendants in furtherance of the conspiracy. This Court is of the opinion that this request calls for matters of evidence, and should accordingly be denied.

This ruling is appropriate in the present case as well.

As suggested by the above ruling, the Court views the defendants' motion, in the majority, as either or both a request for a pretrial script or for further discovery. It appears as though this is a case where the defendants either have in their possession or have been promised virtually all the information to which the government is privy and that the motion is merely an attempt to compel the government to synthesize and correlate the information in a comprehensible format. Reasonably diligent efforts by the defendants should, however, net the same result. *See generally United States v. Manetti*, 323 F.Supp. 683 (D.Del.1971). Given the vast resources available to the defendants, collectively and singularly, and the inappropriateness of the device utilized to accomplish their desire, the Court will decline to grant the defendants' motion as it relates to a majority of the information sought to be contained in a Bill of Particulars.

While the Court categorizes the majority of the information sought to be contained in a Bill of Particulars as inappropriate, the defendants' collective request numbers six (6) and seven (7) have some merit. Paragraphs seven (7) through nine (9) inclusive, of the indictment provide as follows:

7. Beginning at least as early as January 1973, the exact date being unknown to the grand jurors, and continuing thereafter until at least August 1976, the de-

---

18. Memorandum Of The United States In Opposition To Defendants' Motions For Bill Of Particulars, Docket Entry No. 36, pp. 2–3.

The items disclosed as described in paragraphs two (2) through six (6), inclusive, have been provided via a Voluntary Bill of Particulars. The defendants have received this information, although the Bill has not yet been filed. *See* Docket Entry No. 45, p. 93. *See* note 20, *infra*.

19. The Court will not grant discovery pertaining to the majority of the defendants' requests by ordering the filing of a Bill of Particulars. Certain of the requests have merit, however, and the Court will grant the defendants' motion in their regard. *See* note 20 and accompanying text *infra*.

fendants and co–conspirators have engaged in a continuing combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce in violation of Section 1 of the Sherman Act.

8. The aforesaid combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and co–conspirators, the substantial terms of which were to raise, fix, maintain and stabilize the prices and terms and conditions of sale of glassine and greaseproof paper.

9. For the purpose of forming and effectuating the aforesaid combination and conspiracy, the defendants and co–conspirators did those things which they combined and conspired to do.

Docket Entry No. 1, p. 4. While stating the essential elements of an offense under 15 U.S.C. § 1, the indictment "fails to adequately allege the manner and means by which prices [were allegedly fixed and trade restrained], and . . . more specificity will here be required." *United States v. Tedesco, supra* at 1343. The Court does not wish to unduly confine the government's case but the vague allegation of offense will hamper the defendants' preparation of their defense. The information sought in these two (2) requests is quite apart from

the information sought in the various other requests. By these two (2) requests, the defendants will generally gain an apprisal of which type of antitrust violation will be asserted against them at trial rather than the specific evidence presently intended to be proffered to establish that alleged violation. Accordingly, the government will be required to file a Bill of Particulars in response to the defendants' request numbers six (6) and seven (7).[20]

III. *Motion For Inspection Of Attendance, Payroll, And Voting Records Of Grand Jury And Requiring Disclosure Of Unauthorized Persons In The Grand Jury Room.*

A. *Informed Grand Jurors.*

The defendants have filed the above–captioned motion in an effort to ascertain whether the Grand Jury which returned the indictment against them was composed of the requisite number of members in perfect attendance during all the proceedings in which evidence was presented. The defendants assert that disclosure of these records may permit the discovery of a possible basis for dismissing the indictment on constitutional due process grounds because the requisite number of Grand Jury members did

---

**20.** The Voluntary Bill of Particulars provides some degree of specificity but falls short in apprising the defendants of the exact nature of the charges brought against them. To be sure, a Bill need not disclose the government's legal theory, *see, e. g., United States v. Isaacs,* 347 F.Supp. 743 (N.D.Ill.1972), but more is required, especially in a criminal antitrust case of this dimension, than an allegation such as was contained in paragraph nine (9) of the indictment–"the defendants and co–conspirators did those things which they combined and conspired to do." Docket Entry No. 1, p. 4.

The Court rules with regard to the Voluntary Bill of Particulars that they be filed as a matter of public record within five (5) days of the entry of the attached order. The defendants would oppose this ruling on the basis that a revelation to the public of the matters requested in the defendants' motion would unduly prejudice their business endeavors and relationships. The defendants would buttress their argument of undue prejudice by noting that "[i]t must never be forgotten that what is

sought by a bill of particulars is not what actually happened but what the [government] claims happened." *United States v. J. M. Huber Corp.,* 179 F.Supp. 570, 573 (S.D.N.Y.1959). This view is not persuasive with the Court. In the first instance, alleged antitrust violations are a matter of public concern and, absent extraordinary and compelling reasons, matters referring to and defining the indictment should be disclosed. Moreover, Congress intended private, civil enforcement of the antitrust laws and filing Bills of Particulars under seal, as the defendants suggest, may thwart this objective. *See, e. g., United States v. General Motors Corporation,* 352 F.Supp. 1071 (E.D.Mich. 1973); *United States v. American Radiator & Standard Sanitary Corp.,* 274 F.Supp. 790 (W.D.Pa.1967). Finally, the Court does not consider any of the information to be disclosed in either of the Bills to be prejudicial to the point compelling exclusion from public view. *See, e. g., United States v. General Motors Corp., supra.*

not qualify as "informed."[21] No allegation that a quorum was lacking has been made and, indeed, it appears to be uncontested that a quorum existed as required pursuant to F.R.Crim. 6(a). *See* Docket Entry No. 45, pp. 105 and 109.

The defendants are careful to explain that they do not seek the names or identity of the members of the Grand Jury but merely how many and which ones (by identification number) attended the particular sessions in which evidence was presented concerning the charges contained in the indictment. In this regard, the defendants emphasize that no substantive motion has been made and that the Court should be cautioned against considering such a motion. The matter solely presented concerns only the disclosure of the records. The Court recognizes the absolute verity and accuracy of this assertion but is hard-pressed to divorce itself from the only substantive issue to which the records could conceivably pertain. *United States v. Bronston*, 491 F.Supp. 593 (S.D.N.Y.1980). Thus, the entire matter will be discussed although the eventual ruling will only dispose absolutely of the preliminary issue—disclosure of the information sought. *Cf. United States v. Camiel*, Criminal No. 80–161 (E.D.Pa. Sept. 19, 1980) (disclosure granted with provision for subsequent consideration of the substantive motion).

■ In response to the defendants' motion, the government has stated as follows:

While the defendants do not make clear to whom this proposed order is directed, the Government assumes defendants intend production of the grand jury records by the Clerk of the Court of the Eastern District of Pennsylvania, who maintains the requested records. The only such information requested by the defendants in the possession of the Antitrust Division is the number of grand jurors present at a particular session as reflected by grand jury transcripts.

Government's Memorandum In Opposition To Defendants' Joint Motion For Inspection Of Attendance, Payroll And Voting Records Of Grand Jury And Requiring Disclosure Of Unauthorized Persons In The Grand Jury Room, Docket Entry No. 31, p. 1. Accordingly, the Court will enter an Order directing disclosure by the Clerk of the Court of the United States District Court for the Eastern District of Pennsylvania. *See United States v. Berger Industries Inc.*, Criminal No. 79–278 (E.D.Pa. Aug. 15, 1980) (order). The attorneys for the government will also disclose via the previously excised portions of the Grand Jury transcript those portions concerning the number of members of the Grand Jury present at each particular session. *United States v. Camiel, supra; United States v. Godoy*, Criminal No. 79–660 (C.D.Cal. Nov. 6, 1979) (bench memorandum).

The possible filing of the substantive motion which relies upon the above—ordered disclosure as a predicate, once again, would raise a constitutional due process issue concerning whether a member of a Grand Jury must attend all pertinent evidentiary hearing sessions to be considered "informed" to the extent necessary to vote to return an indictment.[22] It is axiomatic that a member must be "informed" in order to return

---

21. F.R.Crim.P. 6(f) provides:
 Finding and return of Indictment. An indictment may be found only upon the concurrence of 12 or more jurors. The indictment shall be returned by the grand jury to a federal magistrate in open court. If a complaint or information is pending against the defendant and 12 jurors do not concur in finding an indictment, the foreman shall so report to a federal magistrate in writing forthwith.

22. Although, as the defendants argue, the substantive motion is not joined before the Court, the issue that would therein be concerned is so intertwined with the predicate issue of disclosure to warrant consideration. The Court acknowledges that much of what it may add in this regard may constitute *dicta* but, because the disclosures already ordered may compel the defendants to pursue the substantive motion, a preliminary indication of the Court's predisposition may be helpful. To be sure, the Court intends to abide by the previously designated trial date of November 3, 1980 and thus offers the following discourse in the belief that it may aid a more expeditious resolution of a possible, future substantive motion.

an indictment. The question then centers around whether a status of "informed" may be abrogated by less than perfect attendance.

The defendants' discussion of the merits of the possible substantive motion focuses on and almost exclusively relies upon the decisions in *United States v. Leverage Funding Systems*, 478 F.Supp. 799 (C.D.Cal. 1979) and *United States v. Roberts*, 481 F.Supp. 1385 (C.D.Cal.1980).[23] In *Leverage Funding*, the district court believed that for

the grand jury to fulfill its role as the independent buffer between the accuser and the accused, at least twelve grand jurors who vote to return an indictment should be informed of all the evidence submitted by the prosecutor. Jurors who are ignorant of some of the evidence presented to the grand jury cannot effectively question the validity of the prosecution's case,

and concluded that to be considered "informed of all the evidence" a member of a Grand Jury *"must attend all sessions at which evidence is presented on the proposed indictment." United States v. Leverage Funding Systems, supra* at 801 and 803. (Emphasis added). Notably, the district court precluded the reading of the transcript as an alternative to presence at the sessions.[24]

*Leverage Funding* and *Roberts* reflect a view that the judicial oversight of the Grand Jury and the manner in which its proceedings are conducted must be in-

creased. The pervasive inference of this view is that the enunciation in *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962) is outdated:

Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will. (Footnote omitted).

The view allegedly usurping the *Wood v. Georgia* philosophy was noted in *Leverage Funding, supra* at 801 where the district court noted that "today the grand jury is a mere servant of the prosecutor and that it does not act as a buffer between the accuser and the accused."[25]

While it is generally acknowledged that district courts are invested with the authority to oversee the functions of the Grand Jury, *Leverage Funding, Roberts* and *Brooklier* represent the only decisions which grant or assume the degree of authority advocated by the defendants in the instant case. To be sure, the vast majority of cases have rejected this very holding. *United States v. Colasurdo*, 453 F.2d 585 (2d Cir. 1971); *Lustiger v. United States*, 386 F.2d 132 (9th Cir. 1967); *United States v. Anzelmo*, 319 F.Supp. 1106 (E.D.La.1970); *In Re*

---

**23.** Although not cited by the defendants, *see also United States v. Brooklier, Criminal No. 79–126* (C.D.Cal.1980).

**24.** In an effort to further explain its rationale in foreclosing a reading of the transcript as an alternative to actual presence, the district court declared:

It has been argued that it is unduly burdensome to require that at least twelve of the jurors who vote to indict attend all grand jury sessions. *United States ex rel. McCann v. Thompson*, 144 F.2d at 607. This court believes, on the contrary, that the government can muster grand juries and schedule its cases with sufficient ease to allow it to adjust its procedures to comply with this decision. (Footnote omitted). If grand jurors were told that their ability to cast a valid

vote on an indictment hinges on their faithful attendance, then perhaps they would take their duties more seriously and appear at all sessions. It is not asking too much to require the faithful attendance of at least twelve out of twenty–three members of a constitutionally mandated body exercising great power over peoples' lives. To demand less casts a disparaging light on the grand jury as an institution and endorses an appearance of unfairness which has no place in our system of justice.
*United States v. Leverage Funding Systems*, 478 F.Supp. 799, 804 (C.D.Cal.1979).

**25.** *See generally* M. Frankel & F. Naftalis, *The Grand Jury*, 22–23 (1977).

*Meckley,* 50 F.Supp. 274 (E.D.Pa.), *aff'd,* 137 F.2d 310 (3d Cir. 1943). *United States v. Godoy, supra,* a case decided one (1) month subsequent to *Leverage Funding* and emanating from the same judicial district, was decided in line with this majority view. In essence, the Court is of the opinion that the majority view is to be accorded more favor.[26]

In *United States v. Thompson,* 144 F.2d 604, 607 (2d Cir. 1944), Judge Learned Hand articulated an extremely persuasive reason, pertinent to this case, for declining to rule that a grand juror must attend all the sessions in order to be considered "informed" enough to vote whether to return an indictment:

> *Since all evidence adduced before a grand jury–certainly when the accused does not appear–is aimed at proving guilt, the absence of some jurors during some part of the hearings will ordinarily merely weaken the prosecution's case.* If what the absentees actually hear is enough to satisfy them, there would seem to be no reason why they should not vote. Against this we can think of nothing except the possibility that some of the evidence adduced by the prosecution might conceivably turn out to be favorable to the accused; and that, if the absentees had heard it, they might have refused to vote a true bill. No one can be entirely sure that this can never occur; but it appears to us so remote a chance that it should be left to those instances in which it can be made to appear that the evidence not heard was of that character, in spite of the extreme difficulty of ever proving what was the evidence before a grand jury. (Emphasis added).

*See also United States v. Pastor,* 419 F.Supp. 1318 (S.D.N.Y.1975). The decision in *Leverage Funding* identifies one (1) flaw in this logic concerning the possibility that the evidence missed was "inculpatory but noncumulative," *United States v. Leverage Funding Systems, supra* at 802, but the

Court deems the possibility of this occurring in this one (1)–count conspiracy indictment to be remote.

In the event that what has just been characterized as remote proves to be what actually has occurred, the Court's predisposition to adopt the majority rule would nevertheless . remain. F.R.Crim.P. 6(e)(1) provides as follows:

> General rule. -A grand juror, an interpreter, *a stenographer, an operator of a recording device, a typist who transcribes recorded testimony,* an attorney for the Government, or any person to whom disclosure is made under paragraph (2)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court. (Emphasis added).

The presence of a stenographer or persons serving a similar function would allow "a juror who has been absent [to] . . . keep abreast of the evidence by reviewing the transcripts or tapes of the missed sessions." *United States v. Camiel, supra* at 2. Unlike the district courts in *Leverage Funding* and *Roberts,* review of transcripts or recordings of missed sessions by absent grand jurors is viewed by this Court to be a viable, acceptable and well–established alternative to requiring perfect attendance. In essence, the application of the course embodied in the majority view does nothing to lessen the extent to which a grand juror is "informed," with the possible exception that the benefit gained from observing the demeanor of a witness will not be available to determine credibility. The practical result of this course is to grant grand jurors the courtesy and luxury of not being required to maintain perfect attendance in order to properly dispense with their responsibilities. In a case involving the complexity and duration of this one, such considerations are absolutely necessary. *United States v. Thompson, supra.* So long as transcripts

---

**26.** Notably, the Court of Appeals for the Ninth Circuit reversed the district court holding in *United States v. Leverage Funding, supra* for reasons consistent with the views expressed herein. *United States v. Leverage Funding,* 637 F.2d 645 (9th Cir. 1980).

and recordings are available, knowledge by the grand jurors of the facts of the case will not be dissipated and the presumption of propriety of Grand Jury proceedings will remain. *See generally United States v. Pastor, supra.*[27]

B. *Unauthorized Persons in the Grand Jury Room.*

This aspect of the defendants' motion has been amicably resolved as evidenced by the following:

In light of the June 27, 1980 affidavit of Eduardo C. Robreno, Attorney, Antitrust Division, United States Department of Justice, and in reliance thereon, the defendants no longer seek an Order of the Court directing the Government to furnish defendants with a list of all persons, other than grand jurors and witnesses before the grand jury during their testimony, who were present at any time during any session of the grand jury.

Defendants had requested this material as part of their Joint Motion for Inspection of Attendance, Payroll and Voting Records of Grand Jury and Requiring Disclosure of Unauthorized Persons in the Grand Jury Room. Defendants' Motion seeking an Order of this Court regarding the Attendance and Voting Records of the Grand Jury has been argued and is awaiting ruling by the Court.

*See* Docket Entry No. 46, p. 1.

IV. *Motion For Disclosure Of Documents Relating To Treatment Of Grand Jury Materials.*

Counsel for the defendants and government have reached an amicable resolution of this motion.

In light of the representations made by the Government in its Memorandum of the United States in Opposition to Defendants' Joint Motion for Disclosures of Documents Relating to Treatment of Grand Jury Materials Pursuant to Federal Rule of Criminal Procedure 6(e), and in reliance thereon, the defendants no longer seek an Order of this Court directing the Government to produce to defendants all applications, petitions, requests, correspondence and motions filed by the Government concerning the chain of custody, control and/or transfer of materials associated with the grand jury.

*See* Docket Entry No. 46, pp. 1–2.

V. *Motion For Excised Portions Of The Grand Jury Transcripts, Including The Government's Opening Statement, Previews And Summations Of Evidence Presented To The Grand Jury.*

Pursuant to this motion, as the caption suggests, the defendants seek disclosure of certain portions of the Grand Jury transcript which the government has excised from view. Additionally, the defendants seek disclosure of the government's opening and closing statements and the testimony of four (4) witnesses. In support of their pursuit, the defendants contend that disclosure is warranted to ascertain whether *Brady* material exists, whether the government failed to present exculpatory information[28] and whether there is a basis to allege prosecutorial misconduct. The relevance of the Jencks Act does not arise for purposes of

---

**27.** An additional reason for considering the majority view as more favored concerns the matter of enforcement of the *Leverage Funding* rule. This concern was best expressed in *United States v. Colasurdo*, 453 F.2d 585, 597 (2d Cir. 1971), an opinion rendered before the *Leverage Funding* decision:

[A] preliminary trial to determine not just the sufficiency of the evidence on each count to sustain the individual court, but a determination of each juror's presence at the time when each item of evidence was introduced would bog down the courts in a morass, a veritable jungle of speculation and conjecture.

Although the difficulty of enforcement of a rule invented to guard against constitutional violations in no way precludes adoption of the rule itself, it is a matter to be considered when analyzing the constitutional and statutory scheme governing Grand Jury proceedings and ascertaining whether, indeed, a constitutional violation has occurred.

**28.** The issue concerning an allegation of the government's failure to present exculpatory information to the Grand Jury has been thoroughly discussed. *See* Part 1 *supra.*

deciding this motion.[29] The government has, of course, objected to the disclosure requested and has filed the appropriate response. It contends that the defendants seek an unprecedented, complete disclosure of the Grand Jury transcripts under the guise of *Brady* and a mere suspicion of prosecutorial misconduct.

The Court notes that the purposes proffered for requiring disclosure would perhaps require an unwarranted invasion into the secrecy of the Grand Jury solely on the basis of mere suspicion. Nevertheless, the matter will be discussed more than cursorily because the Court notes a distinction in the material sought for disclosure. In essence, it would appear that the transcripts of the testimony of the four (4) witnesses not previously disclosed is sought both for reasons of actually discovering the existence of *Brady* material and for possibly uncovering grounds upon which an allegation of prosecutorial misconduct may be based. On the other hand, it would appear that disclosure of the excised portions of all the transcripts, including the government's statements and summations, realistically, is sought purely on the basis of possibly alleging prosecutorial misconduct. The disposition by the Court of these two (2) categories of items must be considered separately.

■ As regards the suspicion of prosecutorial misconduct, case law has recognized that when an allegation is established the indictment may be dismissed. *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979). Before that allegation may be proven, however, evidence must be obtained that oftentimes necessitates an endeavor to gain access to the transcripts of grand jury proceedings. It is upon this endeavor that the policy of maintaining grand jury secrecy arises. *See, e. g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). In order to gain access to the transcripts more than a mere suspicion or speculation of impropriety must be proffered. *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Indeed, the defendants must display a substantial likelihood of gross prejudicial irregularities in the proceedings of the grand jury. *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972), *citing United States v. Politi*, 334 F.Supp. 1318, 1322 (S.D. N.Y.1971). Essentially, a strong presumption that proceedings were conducted properly exists; a presumption not easily overcome, especially by a mere suspicion or unsupported allegation. *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978); *United States v. Budzanoski, supra; United States v. Tedesco*, 441 F.Supp. 1336 (M.D. Pa.1977). It has continually been acknowledged and accepted that "[a]lthough it is difficult to make out a showing without inspecting the minutes, it is of no major importance since an indictment is rarely dismissed because of what happened before the grand jury." *United States v. Mahoney*, 495 F.Supp. 1270 at 1273 (E.D.Pa. 1980). (Footnote Omitted).

■ Against this general background, the Court notes that in cases such as exist here, the burden placed upon the defendants is lessened because the Grand Jury has completed its work.[30] Regardless of the application of a diminished burden,

---

29. *See* Docket Entry No. 45, p. 80.

30. Ordinarily, the burden in gaining disclosure of grand jury matters is quite significant because of the following policy reasons:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect an innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954). *See also United States v. Proctor & Gamble Company*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958).

however, the defendants have completely failed to establish any more than their mere suspicion of irregularities during the conduct of the Grand Jury proceedings. Statements contained in their Joint Memorandum In Support Of Defendants' Joint Motion For Excised Portions Of The Grand Jury Transcripts, Including The Government's Opening Statement, Previews And Summations Of Evidence Presented To The Grand Jury, Docket Entry No. 17, pp. 5-7, are the best evidence of this fact:

> In order to be assured that the prosecution has not unduly influenced the grand jury and undermined its independent integrity (thereby creating cause for the indictment's dismissal), defendants must at a minimum be afforded access to several categories of information. First, defendants must be able to review all exculpatory information. This is to ensure that the prosecutors adhered to their obligations to present guilt-negating information to the grand jury, and determine whether the prosecutors argued to the grand jury facts which they knew were consistent with exculpatory information they possessed,
>
> .　　.　　.　　.　　.
>
> As a corollary to this point, defendants should have access to all grand jury presentations in order to see whether the guilt-negating Brady information was or was not presented to the grand jury. Second, defendants need any materials which may indicate that the prosecutor exercised improper influence over the grand jury in soliciting an indictment in this action. In this regard, defendants are entitled to review all that transpired in the courtroom while the grand jury was present. Absent the wherewithal to conduct such review, it would be impossible for defendants to determine if the prosecutor's comments whether in the course of interrogation or during preview

or summation of testimony, materially prejudiced the grand jury against the defendants or was phrased in such non-neutral terms as to inflame the grand jury. *Defendants submit that if the prosecutors did inflame and prejudice the grand jury,* dismissal of the indictment may be appropriate. (Emphasis added).

Obviously, the speculative terms used throughout their memorandum statements suggest the fact that the defendants entertain merely an unsupported suspicion of irregularity. This cannot be enough to warrant invasion into the secrecy of the Grand Jury proceedings. *United States v. Budzanoski, supra* (request for pretrial discovery of grand jury testimony of four (4) unindicted co conspirators as well as a complete transcript denied for lack of a sufficient showing of irregularity). *See also United States v. Tedesco, supra* at 1334; *United States v. Globe Chemical Co.,* 311 F.Supp. 535, 537 (S.D.Ohio 1969); *United States v. Wolfson,* 294 F.Supp. 267, 277 (D.Del.1968).

▇▇▇ As regards the speculative possibility that the substance of the testimony of the four (4) witnesses which is contained in portions of the Grand Jury transcript not previously disclosed contains *Brady* material, the Court will conduct an *in camera* review. The government will provide the Court with the portions of the transcript pertinent to the testimony of these four (4) witnesses. After review, the Court will order the disclosure of *Brady* material, should any exist. *See United States v. Mahoney, supra,* at 1276 1277; *United States v. Continental Group, Inc.,* 456 F.Supp. 704 (E.D.Pa.1977) (bench memorandum).

VI. *Motion For Production Of Evidence Favorable To The Accused.*

Pursuant to this motion, the defendants seek discovery and disclosure of the following items:

When the Grand Jury completes its work and adjourns, however, only one of these reasons for secrecy remains—"encourag[ing] free and untrammeled disclosures by persons who have information with respect to the commission of crimes." *United States v. Mahoney,* 495 F. Supp. 1270 at 1273 (E.D.Pa.1980). Thus, ac-

cordingly, the burden imposed upon the defendants is lessened to the point where "disclosure is wholly proper where the ends of justice require it." *United States v. Socony Vacuum Oil Company,* 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940).

1. All notes made by the government's attorneys or agents or relating to their interviews of each and every person in connection with the grand jury investigation leading to this indictment ("this grand jury investigation"), whether or not such person testified before this grand jury.

2. All promises, rewards or inducements given to witnesses who testified before the grand jury in this matter or to witnesses whom the government intends to call at trial to prove the averments contained in the above–numbered indictment.

3. The names and addresses of all witnesses summoned to appear before this grand jury whether or not any such witness was sworn and testified before this grand jury.

4. Those portions of the entire transcript of this grand jury proceeding which have not already been produced by the government for the defendants' inspection, including but not limited to (a) the deleted parts of the testimony of grand jury witnesses, and (b) the government's summary of the evidence and final presentation to the grand jury before it retired to vote on this return of this indictment.

5. The transcripts of all testimony given before this grand jury which have not already been produced by the government.

6. The transcripts of all testimony given before any other grand jury, which were read into the record of this grand jury proceeding or otherwise made available to this grand jury.

7. All documents obtained by the government in connection with any other grand jury investigation, whether now terminated or ongoing, which were made available to this grand jury or were used by the government in connection with this grand jury investigation.

8. All documents obtained by the government and all transcripts of testimony given in connection with any other grand jury investigation, whether now terminated or ongoing, which documents or testimony relate to the subject matter of this grand jury investigation.

9. All charts, graphs, schedules or other pictorial or written analyses of material evidence prepared by or for the government's attorneys or their agents, including but not limited to analyses of: (a) telephone calls between or among any of the defendants, corporate or individual; (b) meetings between or among any of the defendants, corporate or individual; (c) price movements (increases, rollbacks, discounts or otherwise) or announcements thereof by, between or among any of the defendants, corporate or individual; or (d) market supply and demand, production capacity and order inventory, or any other economic or statistical analyses of the glassine/greaseproof paper manufacturing industry, whether or not the government intends to use the same as evidence in chief at the trial of this case.

Defendants' Joint Motion For Production Of Evidence Favorable To The Accused, Docket Entry No. 17, pp. 2–4. Reliance in support of this discovery is placed on F.R. Crim.P. 16(a)(1) and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court notes that the government has fully complied with the requirements of F.R.Crim.P. 16(a)(1) and thus only the application of the *Brady* rule will be discussed. *See* Memorandum Of The United States In Opposition To The Defendants' Joint Motion For Production Of Evidence Favorable To The Accused, Docket Entry No. 35, pp. 4-6.

█ The Court notes the importance of making a clarification between the roles afforded F.R.Crim.P. 16(a)(1) and the *Brady* rule. In the present case, the defendants request generally a number of areas in which disclosure is sought without categorizing which areas may be discovered prior to trial pursuant to F.R.Crim.P. 16(a)(1) and which areas must be disclosed pursuant to *Brady* at a time protecting the constitutional rights of the defendants. This distinction is necessary because case law has consistently held that *Brady* did not create a

discovery device as was intended with the promulgation of F.R.Crim.P. 16(a)(1). *See generally Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Fishing expeditions into the government's files and records are not cognizable under *Brady* and its progeny, especially at the pretrial stage. *See, e. g., United States v. Frick,* 490 F.2d 666, 671 (5th Cir. 1973); *United States v. Leta,* 60 F.R.D. 127, 131 (M.D.Pa.1973). The distinction between the two (2) rules was best articulated in *United States v. Kaplan,* 554 F.2d 577, 579–80 (3d Cir. 1977):

> Where documentary evidence is exculpatory, it may be within both *Brady* and Rule 16, but nonexculpatory records are obtainable in advance of trial only by virtue of Rule 16. It is conceivable that some documents which are not covered by Rule 16, . . . may be *Brady* material because of their content.

■ The defendants in the present case have made their general requests for disclosure without specifying under which authority–*Brady* or F.R.Crim.P. 16(a)(1). The Court will not confuse the two (2) rules by applying the time–of–disclosure element of F.R.Crim.P. 16(a)(1) to the nature--of--information–to–be–disclosed as dictated in *Brady.* In other words, the government will not be compelled to disclose *Brady* material at a time dictated by F.R.Crim.P. 16(a)(1). The Court thus finds that inasmuch as all the information required to be disclosed under F.R.Crim.P. 16(a)(1) has already been delivered to the defendants by the government and inasmuch as the government has in good faith stated that it has disclosed all *Brady* information, *see* Memorandum Of The United States In Opposition To Defendants' Joint Motion For Production Of Evidence Favorable To The Accused, Docket Entry No. 35, p. 14, the defendants' joint motion is unpersuasive. The Court in *Archer v. United States,* 393 F.2d 124, 126 (5th Cir. 1968), held that the government need only declare that it is without the information requested to satisfy a court of good faith disclosure under *Brady.*[31]

VII. *Motion To Inspect And Copy Documents.*

■ The government seeks discovery of various material within the possession of the defendants and which the defendants intend to introduce into evidence pursuant to the authority of F.R.Crim.P. 16(b)(1)(A) and (B), 16(c) and Local Rule 9(b). The pertinent rules prescribe as follows:

> F.R.Crim.P. 16(b) Disclosure of Evidence by the Defendant.
>
> (1) Information Subject to Disclosure.
>
> (A) Documents and Tangible Objects. *If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the government, the defendant, on request of the government, shall permit the government to inspect* and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the de-

**31.** The defendants have questioned the government's comprehension of its *Brady* obligation, a doubt to which the Court does not adhere. The government has voluntarily supplied a voluminous amount of pertinent data and information and there does not appear to be anything of record to suggest incomprehension or bad faith.

The Court notes that the government in its memorandum stated that upon the discovery of additional *Brady* material, such will be disclosed to the defendants at a sufficient time to permit adequate preparation at trial by the defendants. Until and if a situation arises when additional *Brady* material is discovered and becomes due, the Court will refrain from further discussion. Nevertheless, the Court will caution the government concerning disclosure by reference to words used in *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342 (1976):

> [b]ecause we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, *the prudent prosecutor will resolve doubtful questions in favor of disclosure.* (Emphasis added).

*See also United States ex rel. Marzeno v. Gengler,* 574 F.2d 730, 739 (3d Cir. 1978) (concurring opinion); *United States v. Pollack,* 534 F.2d 964, 973 (D.C.Cir. 1976); *United States v. Five Persons,* 472 F.Supp. 64, 67 (D.N.J.1979).

fendant and which the defendant intends to introduce as evidence in chief at the trial.

(B) Reports of Examination and Tests. *If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the government, the defendant, on request of the government, shall permit the government to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to his testimony.*

F.R.Crim.P. 16(c) Continuing Duty to Disclose.

. If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional evidence or material.

Local Rule 9(b) Disclosure of Evidence by the Defendant. If at the counsel's conference the defendant requests disclosure under subparagraph (a)(1)(C) or (D) of Fed.R.Crim.P. 16, *upon compliance with such request by the Government, the defendant, upon request of the Government, shall comply with Fed.R.Crim.P. 16(b)(1)(A) and (B).* (Emphasis added). The defendants do not apparently object to the nature of the disclosures requested, having stated that they "know and understand their obligations under Rule 16, and fully intend to comply with them...." Defendants' Memorandum In Opposition To Government's Motion To Inspect And Copy Documents, Docket Entry No. 47, p. 1. What is contested, however, is the allegedly improper timing of the government's motion—it is "not yet ripe." The defendants assert that the filing of the motion is improper because the government has not yet complied with its F.R.Crim.P. 16(a) obligations, a condition precedent to their act of disclosure, and because the procedure outlined in Local Rule 9(c) pertaining to the sequence of events guiding disclosure has not been observed. The Court has already found that the government has complied with its F.R.Crim.P. 16(a) obligations and thus the motion is proper in that respect.[32] The procedural issue is all that remains to be resolved.

Essentially, Local Rule 9 provides a sequence as the defendants suggest—"(1) request by defendants for disclosure, (2) compliance with that request, (3) request by the government for disclosure following their compliance, and (4) compliance with or declination of that request by defendants." Defendants' Memorandum In Opposition To Government's Motion To Inspect And Copy Documents, Docket Entry No. 47, p. 4. The Court has earlier found that sequence numbers 1 and 2 have been observed. Additionally, Exhibits H through K, inclusive, attached to Memorandum In Support Of Government's Motion To Inspect And Copy Documents, Docket Entry No. 44, establish evidence of compliance with the remaining required sequential events. Thus, the government's motion is proper both substantively and procedurally.

■ The Court having found in favor of the government and thus requiring disclosure by the defendants now turns to the question of what constitutes a reasonable time for the performance of this disclosure. The defendants assert that "it is unrealistic to expect... [them] at present to have identified documents which they intend to offer as evidence in chief...." Defendants' Memorandum In Opposition To Government's Motion To Inspect And Copy Documents, Docket Entry No. 47, p. 7. The Court concurs in this assertion inasmuch as the defendants may have delayed the com-

---

**32.** *See* Part VI *supra. See also United States v. Deerfield Specialty Papers, Inc.,* Criminal No. 80-094, (E.D.Pa. September 30, 1980) (memorandum and order).

plete preparation of their defense pending the Court's disposition of the motions herein considered. In any event, certain disclosures have been or are being required by the government and the defendants must be afforded time to analyze these documents before endeavoring the final preparation of their defense. The Court does not believe that the government's preparation of its case will be prejudiced by delaying the date by which the defendants must make disclosures until fifteen (15) days before trial.

An appropriate Order will be entered.

### ORDER

AND NOW, on this 9th day of October, 1980, it is ORDERED that the resolution of the defendant Hollis P. Fowler's Motion To Dismiss Indictment will be considered post trial.

It is FURTHER ORDERED that the remaining defendants' Motion To Dismiss Indictment is DENIED.

It is FURTHER ORDERED that the defendants' Joint Motion For A Bill Of Particulars is GRANTED, IN PART, and DENIED, IN PART. The government attorneys will file a Bill Of Particulars providing the information requested in the defendants' collective numbers six (6) and seven (7), as set forth on page 23 of the Memorandum. The aforementioned Bill and the government's Voluntary Bill Of Particulars will be filed within five (5) days from the entrance of this Memorandum and Order. In all other respects, the Motion is DENIED.

It is FURTHER ORDERED that the defendants' Joint Motion For Inspection Of Attendance, Payroll, And Voting Records Of Grand Jury And Requiring Disclosure Of Unauthorized Persons In The Grand Jury Room is GRANTED. The government attorneys will provide the defendants with the previously excised portions of the Grand Jury transcripts pertinent to attendance and voting. The Clerk of the United States District Court for the Eastern District of Pennsylvania will disclose Grand Jury records within its possession, custody and control pertinent to attendance and voting. The government attorneys and the Clerk will effect disclosure within five (5) days from the entrance of this Memorandum and Order.

It is FURTHER ORDERED that in response to the defendants' Joint Motion For Excised Portions Of The Grand Jury's Transcripts, Including The Government's Opening Statement, Previews And Summations Of Evidence Presented To The Grand Jury the government attorneys will file under seal the transcripts of testimony of the four (4) Grand Jury witnesses not previously disclosed to the defendants in order to permit an *in camera* review by the Court. In all other respects, the Motion is DENIED.

It is FURTHER ORDERED that the defendants' Joint Motion For Production Of Evidence Favorable To The Accused is DENIED.

It is FURTHER ORDERED that the government's Motion To Inspect And Copy Documents is GRANTED. The defendants will effect disclosure on or before October 17, 1980.