UNITED STATES of America,

v.

Robert SKALSKY, Defendant.

Crim. No. 85–121.

United States District Court,
D. New Jersey.

Aug. 26, 1985.

## OPINION

COHEN, Senior District Judge:

On April 10, 1985 the Grand Jury returned a three count indictment against the defendant, Robert Skalsky, charging him with willfully and knowingly attempting to evade and defeat payment of income taxes for the calendar years 1978 (Count I), 1979 (Count II) and 1961 through 1964 (Count III). *See* 26 U.S.C. § 7201; 18 U.S.C. § 2. Currently, there are two motions before this Court which are being made on behalf of the defendant: the first, to dismiss the indictment; the second, to compel disclosure of Grand Jury materials.[1] After a thorough evaluation of the facts and applicable law, and for the reasons which follow, we shall deny the defendant's motion to compel disclosure of Grand Jury materials and reserve decision on his motion to dismiss, pending an evidentiary hearing which shall be described below.

## INTRODUCTION

In early 1980, the defendant was notified that the government sought information from him concerning the business affairs of one Emmanuel Gambino (hereinafter Gambino) who, at that time, was under investigation for income tax evasion. Prior to submitting himself for the government's questioning, the defendant, through his attorney at that time, Michael K. Simon, Esquire, who is also the defendant's son-in-law, entered into an agreement with the government's attorney, George E. Wilson, Esquire. The legal interpretation of this agreement is the initial issue for our consideration.[2]

United States Department of Justice by George E. Wilson, Sp. Atty., Camden, N.J., for U.S.

Wolf, Block, Schorr and Solis-Cohen by Gregory T. Magarity (argued), Nancy D'Mara Ezold (on brief), Andrew A. Chirls (on brief), Philadelphia, Pa., for defendant.

1. At oral argument, defendant's attorney indicated to this Court that he was satisfied with the government's response to three additional motions which had been filed simultaneously with the two at issue here. These three motions, namely: to compel disclosure of certain exculpatory and other discoverable material; for a Bill of Particulars; and to compel the government to maintain certain handwritten notes, memos and summaries, shall therefore be denied as moot.

2. The text of the letter follows:

April 15, 1980

Michael K. Simon, Esquire
Suite 700, 1315 Walnut Street
Philadelphia, Pennsylvania 19107
  Re: Robert Skalsky
Dear Mr. Simon:

On the understandings specified below, the United States will not prosecute Mr. Skalsky for potential charges based upon information supplied to this office *by him.* Such immunity specifically includes charges related to his activities in dealing with Emmanuel Gambino. This agreement is expressly conditioned on this office's knowledge of all activities and possible wrongdoing on Mr. Skalsky's part in connection with Emmanuel Gambino and his representa-

Upon execution of the aforementioned agreement, the defendant was interviewed by two IRS Special Agents prior to his appearance before the Grand Jury. Subsequent to these appearances, the government, through Wilson, determined that the defendant had lied to the Grand Jury and had omitted certain material information from his statement to the Special Agents. As a result of these determinations, defendant's counsel was notified on July 10, 1981 that the earlier agreement would no longer be given any force and effect.[3]

In addition to the above communications to Mr. Simon, the defendant himself became aware, subsequent to July, 1981, that he had become a target of the investigation. Thereafter, on October 6, 1981, the defendant again appeared before a Grand Jury. At this appearance, however, he asserted his Fifth Amendment privilege against self-incrimination on two occasions.

tion through you that no other such wrongdoing exists.

The understandings are that Mr. Skalsky shall truthfully disclose all information with respect to the activities of himself and others concerning all matters about which this office inquires of him, and further, shall truthfully testify before the Grand Jury and/or at any trial or other court proceeding with respect to any matters about which this office may request his testimony.

It is further understood that this agreement is limited to the District of New Jersey, and cannot bind other federal, state, or local prosecuting authorities, although this office will bring the cooperation of Mr. Skalsky to the attention of other prosecuting offices, if requested. If any other prosecuting office should commence an investigation of Mr. Skalsky for the possible wrongdoing referred to in this letter, we will recommend to such other prosecuting agency that it adopt the terms of this letter. It is also understood that on Constitutional grounds, any testimony given pursuant to this agreement is tainted for *use* by any other prosecuting office.

It is further understood that Mr. Skalsky must at all times give complete, truthful and accurate information and testimony. Should it be judged by this office that Mr. Skalsky has given false, incomplete or misleading testimony or information, or has otherwise violated any provision of this agreement, this agreement shall be null and void and he shall thereafter be subject to prosecution in this and any other prosecuting office for any federal criminal violation of which this office has knowledge, including, but not limited to, perjury and obstruction of justice. Any such prosecutions may be premised upon any information provided by Mr. Skalsky and such information may be used against him.

Finally, it is expressly understood that the fact of this agreement is not to be construed as a legal or factual determination by this office that Mr. Skalsky has violated any federal law. This understanding has been entered into solely to facilitate this office's investigation and to clarify Mr. Skalsky's status as a witness.

No additional promises, agreements and conditions have been entered into other than those set forth in this letter and none will be entered into unless in writing and signed by all parties.

Very truly yours,
George E. Wilson
GEORGE E. WILSON
Special Attorney
AGREED AND CONSENTED TO:
Robert Skalsky
ROBERT SKALSKY
Michael K. Simon
MICHAEL K. SIMON, ESQ.
Attorney for Robert Skalsky

**3.** The text of the letter follows:

July 10, 1981

Michael K. Simon, Esq.
Suite 700
1315 Walnut Street
Philadelphia, Pa. 19107
    RE: Robert Skalsky
Dear Mr. Simon:

On April 5, 1980, this office issued a letter form of immunity to your client, Robert Skalsky. One of the terms of that agreement was as follows:

"It is further understood that Mr. Skalsky must at all times give complete, truthful and accurate information and testimony. Should it be judged by this office that Mr. Skalsky has given false, incomplete or misleading testimony or information, or has otherwise violated any provision of this agreement, this agreement shall be null and void".

A review of the statement made by Mr. Skalsky on April 15, 1980 to Special Agents of the Internal Revenue Service, as well as the Grand Jury testimony which he gave later that day (in which statement to the IRS was incorporated) reveals, in the light of more recently acquired third-party evidence, that Mr. Skalsky's testimony in several respects was not complete, truthful, and accurate.

Accordingly, please be advised that the agreement of April 15, 1980, is no longer of any force and effect.

Very truly yours,
George E. Wilson
GEORGE E. WILSON
Special Attorney
cc:  Charles Schmidtheiser
     IRS

This series of contacts between the defendant, his counsel and the government culminated in the filing of the instant indictment.

## DISMISSAL OF THE INDICTMENT

█ Prior to addressing the issue of interpretation of the agreement between the government and this defendant, we note that generally, contractual agreements by which defendants are granted some measure of immunity are binding and enforceable. *See United States v. Quatermain*, 613 F.2d 38, 41 (3d Cir.1980); *United States v. Deerfield Specialty Papers, Inc.*, 501 F.Supp. 796, 800 n. 3 (E.D.Pa.1980). Thus, we recognize, as do the parties, that grants of immunity by judicial decree, pursuant to 18 U.S.C. §§ 6001–6003, are not the only methods of acquiring a witness' testimony.

█ Having determined that the government can confer immunity by agreement, defendant now urges that the agreement at issue conferred upon him the most extensive immunity possible: namely, "transactional" immunity. An agreement of this type would place an absolute bar on prosecution "for the offense to which the compelled testimony relates." *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). However, the very first sentence of the agreement, "On the understandings specified below, the United States will not prosecute Mr. Skalsky for potential charges based upon information supplied to this office by him," contradicts defendant's interpretation. By referencing the agreement to information supplied *by the defendant*, the government has, at the very most, granted him use and derivative use immunity. Transactional immunity, despite defendant's arguments, which are based on his own carefully edited version of the agreement, was not provided.

As an alternate position, the defendant urges that the agreement must be interpreted to protect him with use and derivative use immunity similar to that which is judicially sanctioned in 18 U.S.C. § 6002 and discussed in *Kastigar, supra.* In re-

sponse, the government maintains that it merely entered into an agreement *not to prosecute* the defendant provided he complied with its terms. At first glance, it would appear that the parties' positions are indistinguishable. In essence, a grant of immunity from prosecution bears a striking resemblance to an agreement not to prosecute. However, considering both their up-side and down-side risks, it is apparent that these two means of inducing testimony differ significantly. Although the up-side risk to the potential defendant (*i.e.* non-prosecution) is virtually identical in each instance, the down-side risk (*i.e.* prosecution) differs substantially dependent upon whether a defendant testifies pursuant to an agreement or a grant of judicial immunity.

█ If a defendant is prosecuted following a grant of use and derivative use immunity, the government must establish, by clear and convincing evidence, see *United States v. Smith*, 580 F.Supp. 1418, 1422 (D.N.J.1984), that the evidence it uses to prosecute is derived from legitimate sources independent of the immunized testimony. *Kastigar*, 406 U.S. at 461, 92 S.Ct. at 1665. Any direct use of the defendant's compelled statements can come *only* in a prosecution for perjury or similar crimes. *Cf.* 18 U.S.C. § 6002; *United States v. Frumento*, 552 F.2d 534 (3d Cir.1977) (prosecution subsequent to a judicial grant of immunity).

█ On the other hand, a defendant who breaches an agreement not to prosecute subjects himself to prosecution for substantive offenses which were the topic of his statements. *See Deerfield Papers*, 501 F.Supp. at 800 n. 3. In effect, the government may make use of his statements and any information it is able to derive therefrom. *Id. See also United States v. Stirling*, 571 F.2d 708, 732 (2d Cir.), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978).

In the instant case, the unambiguous language of the agreement compels our decision. The government simply entered into a contract with the defendant whereby it

agreed not to prosecute him and he agreed to "*at all times give complete, truthful and accurate information and testimony.*" (emphasis added). Importantly, the agreement went further and informed the defendant of the consequences facing him in the event he failed to live up to the agreement:

> Should it be judged by this office that Mr. Skalsky has given *false, incomplete or misleading testimony of [sic] information,* or has otherwise violated any provision of this agreement, *this agreement shall null and void and he shall thereafter be subject to prosecution in this and any other prosecuting office for any federal criminal violation of which this office has knowledge,* including, *but not limited to,* perjury and obstruction of justice. Any such prosecutions *may be premised upon any information provided by Mr. Skalsky and such information may be used against him.*

(emphasis added). We note that the defendant, an apparently successful businessman, entered into this agreement willingly *and* with the advice of counsel. *Cf. United States v. Quatermain,* 467 F.Supp. 782, 788 (E.D.Pa.1979) (in interpreting agreement, District Court had been concerned with the fact that defendant was not represented by counsel at the time the agreement was executed). In fact, the government maintains that the defendant's attorney caused certain additions to be made to the agreement. (Government brief at 6). In light of these factors, we hold that defendant willingly *and with the advice and consent and participation of counsel,* entered into a *contract* with the government which, if breached, would expose him to prosecution by the instant indictment. *See Stirling,* 571 F.2d at 732.

Our holding that the government merely agreed not to prosecute the defendant does not end our inquiry. We must now determine whether this agreement was breached by defendant and, if it was, whether that breach was material. The government alleges that defendant breached the agreement on at least the following four occa-

sions. First, when he testified before the Grand Jury in April, 1980, he stated that he had reported, on his 1977 tax return, his portion of a $15,000.00 finder's fee which he shared with Gambino and another. The government maintains that he failed to file a return for 1977. Second, when asked by IRS Special Agents about specific real estate holdings in Atlantic City, New Jersey, Skalsky stated merely that he and Gambino had held options on the property which never materialized. The government contends that he totally omitted any mention of a $250,000.00 settlement which he had divided with Gambino and which he had received prior to making this statement. Third, subsequent to being informed that his agreement with the government was null and void and that he was a target of investigation, Skalsky asserted his Fifth Amendment rights on two occasions before the October, 1981 Grand Jury. Fourth, several of the answers given by Skalsky to the October, 1981 Grand Jury relating to numerous business dealings, are alleged to have been false. (Wilson Affidavit ¶¶ 15–17, 11–14, 27–28, 29–31 respectively). Each of these allegations of breach, contained in the affidavit of the government attorney responsible for the case, has gone uncontradicted by defendant except for non-evidential statements made within his brief and notice of motion.

Were this merely a civil breach of contract case, the Court would be satisfied with the uncontradicted, sworn statements of a party, especially a non-moving party. *See e.g.* Fed.R.Civ.P. 56(c). This is not, however, a civil case. Rather, defendant has been charged with serious criminal offenses and is entitled to a presumption of innocence. Although the affidavit of the responsible government attorney is somewhat probative of the issue of the defendant's breach, we feel compelled to require more under circumstances such as these which have the potential to lead to a criminal prosecution. Up to now, this Court has been provided with only a skeleton of the government's allegations of breach. In order to reach a valid decision on this issue,

we shall require that the government, by way of a limited evidentiary hearing, add some flesh to this skeleton through testimonial and/or documentary evidence of the defendant's breach. Because we find that three of the four alleged breaches, even if proven, would not be material, this hearing may be limited to proof of only one.

First, the issue of whether defendant reported the $5,000.00 finder's fee on his 1977 tax return is neither relevant nor material to the investigation of Gambino which was being conducted in April, 1980. In questioning Skalsky, the government's attorney sought to determine the state of mind of the recipients of this fee. In essence, he sought to determine whether they considered it to be taxable income. (Wilson Affidavit ¶ 15 quoting transcript of Skalsky's April 15, 1980 Grand Jury appearance). Thus, the government got what it wanted: a series of statements from Skalsky which evinced his belief that the money was "income." Skalsky's statement that he had reported the fee on his income tax is simply not material to the Gambino investigation, even if patently false.

Likewise, the government's third and fourth grounds for alleging a breach, which relate to defendant's October, 1981 Grand Jury appearance, are without merit. At the time of this appearance, defendant had been informed, by the government, of two very important facts: first, that the April, 1980 agreement was no longer of any force and effect; and second, that he had become a target of the Grand Jury investigation. The government urges that "[a]n honest belief [on Skalsky's part] that he had not [previously] breached the agreement would have compelled him to cooperate." (Government's brief at 18). This argument borders on speciousness. Having been informed that his agreement with the government was null and void and that the investigation had turned to him, Skalsky appears to have acted reasonably in asserting his Fifth Amendment rights. The government's allegations of lying to the Grand Jury, in light of the July 10th, 1981 letter voiding the agreement, cannot,

for our purposes, be seen as a breach of the agreement.

The government is left with its allegations of breach which relate to Skalsky's and Gambino's real estate dealings in Atlantic City, New Jersey. Because we feel that these allegations of breach, if proven, would be material, thus warranting the government's voiding of the agreement, we shall hold an evidentiary hearing in order to allow the government the opportunity to prove its allegations with testimonal and/or documentary evidence. Although this hearing need *not* be as extensive as a *Kastigar* hearing, we shall require that the government prove Skalsky's breach by clear and convincing evidence. *See United States v. Smith*, 580 F.Supp. 1418, 1422 (D.N.J.1984).

Materiality, we note, is an issue of law for the Court's consideration. *See United States v. Crocker*, 568 F.2d 1049, 1056 (3d Cir.1977). In addition, it is well established that a statement is material "if it has a tendency to influence, impede, or hamper the grand jury from pursuing its investigation." *United States v. Lardieri*, 497 F.2d 317, 319 (3d Cir.1974), *on rehearing*, 506 F.2d 319 (3d Cir.1974). In the instant case, the April, 1980 Grand Jury was undertaking an investigation of Skalsky's business associate, Emmanuel Gambino, in order to ascertain whether Gambino should be indicted for tax evasion. Defendant was well aware of the Grand Jury's purpose both at the time he executed the agreement and when he was interviewed by IRS Special Agents. He was also aware that any information which he could provide with regard to money received by Gambino would be helpful to the government's investigation.

The government maintains that Skalsky was asked directly about his and Gambino's ownership interests in two Atlantic City properties. Skalsky allegedly responded merely that they had held options which "never materialized." (Report of Special Agents Gould and Pisker, p. 3, attached as Exhibit 1 to Wilson affidavit). If, as the government maintains, Skalsky and Gambino actually divided a $250,000.00 settle-

**682**

ment arising from litigation concerning these properties, Skalsky's failure to inform the Special Agents of this fact would certainly appear to have had a "tendency to influence, impede, or hamper" the Gambino investigation. *Lardieri*, 497 F.2d at 319.[4]

This Court shall, therefore, hold an evidentiary hearing with the purpose of determining whether or not defendant breached his agreement with the government. Our final decision on the instant motion to dismiss shall await the outcome of the hearing.

## DISCLOSURE OF GRAND JURY MATERIALS

By this motion, defendant seeks to compel disclosure of a vast quantity of materials which were presented to the Grand Jury. He urges that his request should be granted, pursuant to Fed.R.Crim.P. 6(e)(3)(C)(i) and (ii), as a result of two prior disclosures by the government to IRS personnel in violation of Fed.R.Crim.P. 6(e)(2).

Defendant's first allegation of violation is premised on a letter to his second former attorney, James C. Schwartzman, Esquire, from Stanley F. Krysa, the Chief of the Criminal Section of the Justice Department, Tax Division, which stated in its entirety, "This is to advise you that the above captioned case has been transmitted to the Internal Revenue Service." (Krysa letter of May 20, 1983, Exhibit C, to defendant's Notice of Motion). In his affidavit, Michael K. Simon, Esquire, who is defendant's son-in-law and the attorney who represented him prior to Mr. Schwartzman, avers that Schwartzman informed him of a conversation he had with Mr. Krysa, who informed him that the letter was an indication that his case had been referred to the IRS for *civil* prosecution. (Simon affidavit ¶¶ 14–15).

The government concedes that if the Skalsky Grand Jury materials had been referred to the IRS for civil prosecution, such referral would be in violation of Rule 6. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). In response to defendant's allegations, however, the government has presented the affidavit of Stanley F. Krysa, the author of the letter in question. From his affidavit, it becomes clear that this letter was sent in error and that the case was never referred to IRS for civil prosecution. Krysa avers that letters of this type are only sent when prosecution has been declined. (Krysa affidavit ¶ 5). Furthermore, he avers that prosecution of Mr. Skalsky was never declined. (*Id.* ¶ 6). The affidavit of Russell Stewart, who was the Senior Tax Attorney assigned to assist the Grand Jury, confirms this statement. (Stewart affidavit, ¶ 5, attached as Exhibit 2 to Wilson supplemental affidavit). It is clear that the case was merely sent to the IRS Regional Counsel for referral back to the Strike Force and IRS District Counsel for further information on two issues relevant to the investigation. (*Id.* ¶ 4). In light of the hearsay nature of the Simon affidavit, and the explanation provided by the Krysa affidavit, we find that there was no transmittal of defendant's case to the IRS Civil Division in violation of Rule 6(e). We note, as well, the relevant fact that there has been no civil tax proceedings initiated against the defendant with reference to the time periods at issue before the Grand Jury.

The second violation alleged by defendant concerns the disclosure of Grand Jury materials to IRS criminal investigators. Such disclosures can hardly be challenged if, as in this case, they have been made for the purpose of obtaining technical advice regarding the criminal matter being investigated and they satisfy the criteria of Rule 6(e)(3)(A)(i) or (ii). *See Sells Engineering*, 463 U.S. at 426, 103 S.Ct. at 3139. Cooperation between various branches of the government in the investigation and en-

---

**4.** Even though the government need not prove that the statement did influence, impede, or hamper the investigation, *see United States v. Isabella*, 582 F.Supp. 1534, 1535 (E.D.Pa.1984), we note that the government, based on Skalsky's response, did not pursue the real estate deals before the Grand Jury. (Wilson affidavit ¶¶ 12–13).

forcement of the criminal statutes, when done in recognition of procedural rules, should be commended and not discouraged. We find that the submissions or disclosures to various IRS criminal investigators and tax specialists are within the ambit of valid Rule 6 disclosures and did not require a court order pursuant to Rule 6(e)(3)(C). We shall, therefore, deny defendant's motion.

The primary concern in the disclosure of Grand Jury materials is that the Grand Jury's secrecy remain intact to the greatest extent possible. *Sells Engineering,* 463 U.S. at 423–25, 103 S.Ct. at 3137–38. When any information is divulged, secrecy is threatened. The enactment of Rules 6(e)(3)(A)(i) and (ii), however, indicates a recognition of the fact that a certain level of disclosure is necessary for the Grand Jury to function properly. Each of the individuals responsible for supervising the disclosed materials has submitted an affidavit describing the actions taken in order to protect the integrity of that material. We are satisfied that these actions have sufficiently protected the interests involved, and therefore hold that these disclosures do not violate Rule 6(e) so as to warrant disclosure to the defendant.[5]

The only grounds alleged by defendant as support for his motion are those discussed above. Because we find no merit to these allegations, we shall deny defendant's motion.

The Court shall enter an order appropriate to both of the motions considered herein.

---

**5.** In his affidavit, George E. Wilson, Special Attorney, related the procedures followed in obtaining assistance from IRS experts regarding the question of defendant's tax law violations. Wilson further averred that the names of personnel given access to this material were promptly provided to the district court pursuant to Rule 6(e)(3)(B).

Charles J. Schmidheiser, a Special Agent with the Criminal Investigation Division of the IRS, averred that he received specific instructions with regard to the use and maintenance of any Grand Jury material divulged to him. He further averred that the Skalsky investigation was conducted in accordance with the standard procedure described which includes the virtually

total segregation of all Grand Jury materials. *See* Exhibit 1 to Wilson affidavit.

Likewise, Richard A. Francis, Deputy Regional Counsel for Criminal Tax cases for the IRS Mid-Atlantic Region, described the procedures followed by his office including secrecy and segregation of Grand Jury materials. *See* Exhibit 2 to Wilson affidavit.

Finally, Russell Stewart, the Senior Tax Attorney assigned to assist the Grand Jury investigation, averred that the procedures articulated in the Francis affidavit were followed in this case. Moreover, Stewart stated that the Justice Department never declined prosecution of this matter.